1  JULIE GUTMAN DICKINSON (SBN 148267)
   jgutmandickinson@bushgottlieb.com
2  LISA C. DEMIDOVICH (SBN 245836)
   ldemidovich@bushgottlieb.com
3  SOPHIE NEWMAN (SBN 353075)
   snewman@bushgottlieb.com
4  BUSH GOTTLIEB, A Law Corporation
   801 North Brand Boulevard, Suite 950
5  Glendale, California 91203-1260
   Telephone: (818) 973-3200
6  Facsimile: (818) 973-3201

7  Attorneys for SAG-AFTRA

8              UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  BRIAN NEAL TAYLOR,                    Case No. 2:24-cv-02003-JLS-JC

12              Plaintiff,                 **DEFENDANT SAG-AFTRA'S
                                          NOTICE OF MOTION AND
13       vs.                              MOTION TO DISMISS;
                                          MEMORANDUM OF POINTS AND
14  SCREEN ACTORS GUILD -                 AUTHORITIES**
    AMERICAN FEDERATION OF
15  TELEVISION AND RADIO
    ARTISTS, a labor organization, and    **Judge: Hon. Josephine L. Staton
16  Delaware Corporation; DOES 1 through   Date: April 19, 2024
    20, inclusive,                         Time: 10:30am PST
17                                         Ctrm: 8A**
                Defendant.
18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

1

## NOTICE OF MOTION

2 **TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

3     **PLEASE TAKE NOTICE THAT** on April 19, 2024, at 10:30am PST, or as

4 soon thereafter as counsel may be heard, in the courtroom of the Honorable

5 Josephine L. Staton (Courtroom 8A), located in the United States Courthouse, 350

6 West 1st Street, Los Angeles, CA 90012, Defendant Screen Actors Guild-American

7 Federation of Television and Radio Artists ("SAG-AFTRA" or "Union") will and

8 hereby does move this Court to Dismiss under Federal Rules of Civil Procedure

9 Rules 12(b)(6) and 12(b)(1).

10     This Motion is made upon the following grounds:

11     First, the statute of limitations for duty of fair representation ("DFR") claim is

12 an intentionally short six months. The alleged conduct of the Union that Plaintiff

13 claims breached the DFR occurred in July 2021 when the Return-to-Work

14 Agreements' ("RTWAs") COVID-19 vaccination policy was adopted. Plaintiff filed

15 a DFR claim more than two-and-a-half-years later. This Court must dismiss this

16 clearly stale action.

17     Second, the Complaint fails to state a claim against SAG-AFTRA for DFR

18 breach. Plaintiff has not alleged sufficient facts to state a claim that the Union's

19 conduct was discriminatory, bad faith, or arbitrary. Further, Plaintiff has not alleged

20 facts establishing that any harm suffered by Plaintiff was caused by the Union's

21 challenged conduct. Also, to the extent the claim involves insufficient representation

22 of Plaintiff's individual statutory rights, the DFR does not apply.

23     Third, the Complaint is not justiciable because Plaintiff lacks standing in so

24 far as they fail to allege causation. Similarly, Plaintiff has not pleaded the required

25 DFR element of a causal link between the Union's representational conduct—

26 entering into the RTWAs that allowed producer-employers to choose whether they

27 wanted to adopt mandatory COVID-19 vaccination policies—and the alleged

28 injury—Plaintiff not being offered roles by third-party producer-employers because

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

1  of their vaccination status. The alleged loss of roles cannot be traced to the Union's

2  conduct.

3      Fourth, Plaintiff's remaining state-law claims are preempted and subsumed by

4  the DFR derived from the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.*,

5  and/or Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and

6  thus must also be dismissed under the same analysis of being time-barred, failure to

7  state a claim, and absence of causation.

8      This Motion is based on this Notice of Motion, the attached Memorandum of

9  Points and Authorities, all of the pleadings, files, and records in this proceeding, all

10  other matters of which the Court may take judicial notice, and any argument or

11  evidence that may be presented to or considered by the Court prior to its ruling.

12      This motion is made following the conference of counsel pursuant to L.R. 7-3

13  which took place on February 27, 2024, and email correspondence through March 5,

14  2024.

15  DATED:  March 20, 2024         JULIE GUTMAN DICKINSON

16                                LISA C. DEMIDOVICH
                                  SOPHIE NEWMAN
17                                BUSH GOTTLIEB, A Law Corporation

18

19

20                       By:    s/ *Lisa C. Demidovich*

21                              LISA C. DEMIDOVICH
                         Attorneys for SAG-AFTRA
22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 1

I.    INTRODUCTION ........................................................................................ 1

II.   PERTINENT ALLEGATIONS .................................................................... 2

III.  LEGAL ARGUMENT .................................................................................. 3

    A.    Legal Standard Under 12(b)(6) ...................................................... 3

    B.    The Court Should Grant the Motion to Dismiss Because Plaintiff's Claims Are Time-Barred .............................................. 4

        1.    DFR Claim Over Negotiations of RTWAs Is Time-Barred ......... 5

        2.    DFR Claim Over RTWAs' Implementation Is Time-Barred ...................................................................................... 6

    C.    Plaintiff Has Failed to State a DFR Claim ..................................... 7

        1.    Courts Have Fashioned a High Standard for DFR Plaintiff ......... 7

        2.    SAG-AFTRA Exercised Discretion When Negotiating the COVID Provision So Arbitrariness Is Insufficient ...................... 8

        3.    Plaintiff Has Not Alleged Discriminatory Conduct .................. 10

        4.    Plaintiff Has Not Stated a Claim Based on Bad Faith ............... 11

        5.    A DFR Claim Over Insufficient Representation of Plaintiff's Individual Statutory Rights Is Not Cognizable ......... 12

    D.    Plaintiff Lacks Standing As They Fail to Allege Causation, and This Failure Also Shows They Have Failed to State a DFR Claim ..... 13

        1.    Legal Standard Under Rule 12(b)(1) ......................................... 13

        2.    Plaintiff's Claims Are Non-Justiciable and Must be Dismissed Under Rule 12(b)(1) ................................................ 13

        3.    Failure to Plead Causation is An Independent Ground to Dismiss Plaintiff's Claims under Rule 12(b)(6) ...................... 14

    E.    Plaintiff's State-Law Claims Are Preempted .............................. 16

        1.    Federal Labor Law Preemption of State Law Claims ............... 16

            (a)    DFR Preemption of State-Law Claims ........................... 16

            (b)    LMRA Preemption of State-Law Claims ........................ 17

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

i

2.    Breach of Contract ..................................................................... 17

3.    Breach of Fiduciary Duty ........................................................... 18

4.    Breach of Covenant of Good Faith and Fair Dealing ................. 19

5.    Negligence ................................................................................. 19

6.    Tortious Interference with Business .......................................... 20

7.    Intentional Infliction of Emotional Distress .............................. 20

8.    Negligent Infliction of Emotional Distress ................................ 21

IV.    CONCLUSION ................................................................................. 21

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

ii

1

## **TABLE OF AUTHORITIES**

2

**Cases**                                                                                      **Page(s)**

3

*Ackley v. W. Conference of Teamsters*, 958 F.2d 1463 (9th Cir. 1992) .................. 15

4

*Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393 (9th Cir. 1986) .................. 7, 12, 14

5

*Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174 (9th Cir. 2010) ................... 5

6

*Adkins v. Mireles*, 526 F.3d 531 (9th Cir. 2008) .......................... 16, 17, 19, 20, 21

7

*Allen v. UFCW*, 43 F.3d 424 (9th Cir. 1994) ......................................................... 5

8

*Allen v. Wright*, 468 U.S. 737 (1984) ............................................................. 13, 14

9

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985) ................................... 16, 18

10

*ALPA v. O'Neill*, 499 U.S. 65 (1991) .............................................................. 8, 9

11

*Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006) ................................................. 13

12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 4, 11

13

*Audette v. ILWU*, 195 F.3d 1107 (9th Cir. 1999) .............................................. 19

14

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......................... 4

15

*Batache v. Santi*,
   No. 2:18-cv-6907-ODW, 2018 U.S. Dist. LEXIS 195304 (C.D. Cal.
   Nov. 15, 2018) ............................................................................................ 22

16

*Bautista v. Pan Am. World Airlines*, 828 F.2d 546 (9th Cir. 1987) ....................... 11

17

*Beck v. UFCW*, 506 F.3d 874 (9th Cir. 2007) ..................................................... 9

18

*Beckington v. Am. Airlines*, 926 F.3d 595 (9th Cir. 2019) .................................... 4

19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 4

20

*Bishop v. ALPA*, 5 F.4th 684 (7th Cir. 2021) ...................................................... 8

21

*Brown v. Alaska Airlines, Inc.*,
   642 F. Supp. 3d 1259,1265 (W.D. Wash. 2022) .............................................. 21

22

*Burkevich v. ALPA*, 894 F.2d 346 (9th Cir. 1990) ........................................... 8, 9

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

iii

*Carpenters v. Metal Trades Dep't*, 770 F.3d 846 (9th Cir. 2014) .......................... 10

*Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) ................................................ 17

*Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) .................... 4, 11

*Chappel v. Lab. Corp.*, 232 F.3d 719 (9th Cir. 2000) ............................................ 21

*Conley v. IBEW Local 639*, 810 F.2d 913 (9th Cir. 1987) ...................................... 7

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983) ............................ 4, 16

*Dement v. Richmond F. & P.R. Co.*, 845 F.2d 451 (4th Cir. 1988) ...................... 10

*Demetris v. Transp. Workers*, 862 F.3d 799 (9th Cir. 2017) .................... 8, 9, 10, 12

*DiOrio v. NEA*,
      No. 23-246 WES, 2023 U.S. Dist. LEXIS 198656 (D.R.I. Nov. 6,
      2023) ..........................................................................................................10, 15

*Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59 (1978) .................... 14

*Erkins v. United Steelworkers*, 723 F.2d 837 (11th Cir. 1984) .............................. 17

*Ethridge v. Harbor House Rest.*, 861 F.2d 1389 (9th Cir. 1988) .......................... 16

*Fisher v. Screen Actors Guild*, No. 2:21-cv-05215-CAS-JEMx, 2022
      U.S. Dist. LEXIS 134693 (C.D. Cal. July 27, 2022) ........................................ 7

*Flathau v. Int'l Ass'n of Machinists, Dist. 141*,
      No. C03-0278L, 2003 U.S. Dist. LEXIS 8827 (W.D. Wash. May 14,
      2003) ..................................................................................................................5

*Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953) .............................................. 8, 9

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1 (1983) .............. 17

*Galindo v. Stoody Co.*, 793 F.2d 1502 (9th Cir. 1986) ........................................ 4, 6

*Garcia v. SEIU*, 993 F.3d 757 (9th Cir. 2021) .................................................. 17, 19

*Humphrey v. Moore*, 375 U.S. 335 (1964) ............................................................ 8

*IBEW v. Foust*, 442 U.S. 42 (1979) ...................................................................... 18

*IBEW v. Hechler*, 481 U.S. 851 (1987) ................................................................ 20

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Int'l Ass'n of Machinists v. NLRB*, 362 U.S. 411 (1960) ........................................... 5

*Jay v. SEIU*, 203 F. Supp. 3d 1024 (N.D. Cal. 2016) ....................................... 4, 22

*Jeffrey v. Hegarty*,
      No. 5:15-cv-04506-HRL, 2017 U.S. Dist. LEXIS 47006 (N.D. Cal.
      Mar. 29, 2017) ................................................................................................. 12

*Johnson v. USPS*, 756 F.2d 1461 (9th Cir. 1985) ............................................. 9

*Kalombo v. Hughes Mkt. Inc.*, 886 F.2d 258 (9th Cir. 1989) ................................. 4

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
      832 F.3d 1024 (9th Cir. 2016) ..................................................................... 18

*Kolinske v. Lubbers*, 712 F.2d 471 (D.C. Cir. 1983) ........................................... 12

*Madison v. Motion Picture Set Painters*,
      132 F. Supp. 2d 1244 (C.D. Cal. 2000) ................................................. 17, 18, 20

*Marquez v. Screen Actors Guild*, 525 U.S. 33 (1988) ................................... 7, 12

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ........................................ 13

*Muldoon v. Teamsters Local 572*,
      No. CV 22-0161 DSF, 2023 U.S. Dist. LEXIS 67193 (C.D. Cal.
      Apr. 17, 2023) ................................................................................................... 5

*Perugini v. Safeway Stores*, 935 F.2d 1083 (9th Cir. 1991) ........................... 16, 21

*Peterson v. Kennedy*, 771 F.2d 1244 (9th Cir. 1995) ........................................ 9

*Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17 (1962) .................. 18

*Robesky v. Qantas Empire Airway*, 573 F.2d 1082 (9th Cir. 1978) ...................... 13

*Simo v. Union of Needletrades*, 322 F.3d 602 (9th Cir. 2003) ........................... 12

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) .................................................. 14

*St. Elec. Ry. v. Lockridge*, 403 U.S. 274 (1971) ............................................. 11, 12

*Stevens v. Moore Bus. Forms*, 18 F.3d 1443 (9th Cir. 1994) ............................. 11

*U.S. v. Ritchie*, 342 F.3d 903 (9th Cir. 2003) .................................................... 2

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*United Steelworkers v. Rawson*, 495 U.S. 362 (1990) ...................................... 12, 21

*Vaca v. Sipes*, 386 U.S. 171 (1967) .................................................................. 7, 16

*Ward v. Circus Casinos, Inc.*, 473 F.3d 994 (9th Cir. 2007)................................. 20

*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................... 14

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ......................................................... 13

*Wickstrom v. ALPA*,
    No. 23 C 2631, 2023 U.S. Dist. LEXIS 155987 (N.D. Ill. Sep. 5,
    2023) ........................................................................................................ 10, 12, 13

*Williams v. Pac. Mar. Ass'n.*, 617 F.2d 1321 (9th Cir. 1980)................................... 7

*Wooddell v. IBEW*, 502 U.S. 93 (1991) ................................................................. 18

## Constitutions

United States Constitution Article III ..................................................................... 13

United States Constitution Article VI, cl. 2 ............................................................ 16

## Statutes

29 U.S.C. §§ 151, *et seq.* ......................................................................................... 2

29 U.S.C. § 185(a) .................................................................................................. 18

Labor Management Relations Act § 301, 29 U.S.C. § 185 ............... 2, 16, 17, 18, 19

## Court Rules

Rule 12(b)(1)..................................................................................................... 13, 14

Rule 12(b)(6)....................................................................................................... 4, 14

## Other Authorities

351 NLRB 1417 (2000) .......................................................................................... 18

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

Everyone was profoundly impacted by the COVID-19 pandemic. There was hardly universal consensus by the Summer of 2021 on how to address the virus's continued threat in workplaces. Forty plaintiffs, who are members of the union Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA" or "Union") or work under its contracts, filed civil actions against SAG-AFTRA in Los Angeles Superior Court. SAG-AFTRA removed the actions to federal court. Plaintiff alleges SAG-AFTRA caused financial and emotional injury to Plaintiff by violating the Duty of Fair Representation ("DFR") owed to union members under federal labor law along with other preempted state-law claims derived from the same representational conduct by the Union.

The alleged DFR violation arose from the Union's participation in the unprecedented coordination with multiple unions to negotiate, execute, and implement Return-to-Work Agreements ("RTWAs") with producer-employers after a months-long production shutdown. The RTWAs were in effect from September 21, 2020, until the last version expired on May 11, 2023, Complaint ¶ 18, enabling creative workers to be one of the first non-essential worker sectors to return to in-person work safely after the COVID-19 pandemic. In July 2021, a COVID-19 vaccination policy was negotiated to acknowledge producer-employers could implement vaccination requirements. The Complaint alleges by negotiating, adopting, and implementing the RTWAs, the Union failed to adequately represent members who chose against vaccination for religious, philosophical, personal, or medical reasons.

This Court must dismiss Plaintiff's claims against the Union for four independent reasons.

First, the statute of limitations for DFR claims is an intentionally short six months. The Union allegedly breached the DFR in July 2021 when the RTWAs'

COVID-19 vaccination policy was adopted. Plaintiff filed their claims two-and-a half-years later, in December 2023, well beyond the statute of limitations period. The last RTWA expired on May 13, 2023, so all implementation under the RTWAs occurred more than six months before Plaintiff filed their Complaint.

Second, Plaintiff has failed to state a claim against SAG-AFTRA for DFR breach because they have not alleged sufficient facts that the Union's conduct was discriminatory, bad faith, or arbitrary. Further, Plaintiff has not alleged facts establishing that any harm suffered by Plaintiff was caused by the Union's challenged conduct. The DFR does not apply to alleged insufficient representation of Plaintiff's individual statutory rights.

Third, Plaintiff lacks standing because they fail to allege causation, which is also a required element of a DFR breach. Plaintiff's attempt to tie their alleged loss of roles offered by producer-employers to the Union's representational roles does not pass the plausibility test.

Fourth, Plaintiff's remaining state-law claims are preempted by the DFR derived from the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.* and/or Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and thus must also be dismissed under the same analysis. Consequently, SAG-AFTRA respectfully requests dismissal of the Complaint.

## II.    PERTINENT ALLEGATIONS

SAG-AFTRA is a union representing performers in the United States. Complaint ¶¶ 4-5. On September 21, 2020, a RTWA was first negotiated by SAG-AFTRA and production companies. *Id.* ¶¶ 18, 32. In July 2021,[1] the RTWA was

---

[1] Because the Complaint references the 2021 RTWA without quoting the entire relevant sections, Plaintiff incorporates this agreement by reference. Complaint ¶¶ 18-27; *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

subsequently revised, and the COVID vaccination policy was added, *id.* ¶ 23, acknowledging producer-employers could elect to impose COVID-19 vaccination requirements, subject to reasonable accommodations. *Id.*, 2021 RTWA. Plaintiff does not allege when they were first informed of the RTWA, but plead they began to have difficulty booking work due to the vaccination requirements as of 2021. *Id.* ¶ 38-41.

Producer-employers make hiring decisions along with casting agencies and other entities external to SAG-AFTRA, and operate the audition and hiring process for performers. *Id.* ¶¶ 32, 40, 73. Plaintiff has not alleged that the Union plays any role in the hiring process. *Id.* Nor has Plaintiff alleged they would have secured employment had the RTWAs not been adopted. *Id.*

The last RTWA expired on May 11, 2023. *Id.* ¶ 18. Likewise, Plaintiff does not allege the other documents referred to in the Complaint—the collective bargaining agreement ("CBA"), the Membership Agreement, or the SAG-AFTRA Constitution—were adopted or have been revised since then. *Id.* ¶ 15.

## III.    **LEGAL ARGUMENT**

### A.    **Legal Standard Under 12(b)(6)**

To survive a dismissal motion, plaintiffs must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative

---

plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).")." The publicly-accessible 2021 RTWA provides: "**Where permitted by law,** a Producer may implement a policy providing that [employees] must be fully vaccinated against COVID-19 as a condition of employment and/or prior to entering the workplace, s**ubject to reasonable accommodations as required by law for individuals who cannot be vaccinated due to disability or a sincerely held religious belief, practice, or observance** . . . ." (emphasis supplied).

level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint "must contain sufficient well-pleaded, nonconclusory factual allegation[s]" to allege a plausible claim for relief. *Beckington v. Am. Airlines*, 926 F.3d 595, 604 (9th Cir. 2019) (cleaned up). This plausibility standard demands more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Thus, where an "obvious alternative explanation" exists, the plaintiff's cause of action is not plausible and must be dismissed. *Id.* at 682 (quoting *Twombly*, 550 U.S. at 567); *Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiff cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation."); *Jay v. SEIU*, 203 F. Supp. 3d 1024, 1039-40 (N.D. Cal. 2016) (holding conclusory allegations of DFR breach are not sufficient to state claim). To survive a Rule 12(b)(6) motion, a DFR plaintiff must at least allege the union engaged in arbitrary, discriminatory, or bad faith conduct *and offer some factual support for such claims*. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 701 (9th Cir. 1988).

## B.    The Court Should Grant the Motion to Dismiss Because Plaintiff's Claims Are Time-Barred

The six-month statute of limitations for a DFR breach is established by longstanding Supreme Court law. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163–72 (1983) (holding DFR claims have a six-month statute of limitations); *Kalombo v. Hughes Mkt. Inc.*, 886 F.2d 258, 259 (9th Cir. 1989). "A reasoned analysis of the question when a [DFR] claim accrues must focus on the context in which the claim arose." *Galindo v. Stoody Co.*, 793 F.2d 1502, 1509 (9th Cir. 1986). Plaintiff alleges that SAG-AFTRA breached its DFR through "their support and defense of the COVID-19 Mandates advocated in the [RTWAs], which

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    were adverse to the rights and claims of the Union Members." Complaint ¶ 45.

2         **1.    DFR Claim Over Negotiations of RTWAs Is Time-Barred**

3         Plaintiff's action protesting the Union's *negotiation* and *execution* of the

4    RTWAs are barred by the statute of limitations. Where a plaintiff challenges union

5    conduct in the context of contract negotiations and execution, the claim accrues *at*

6    *the latest* when "negotiations are complete and a 'final product' has been reached."

7    *Addington v. U.S. Airline Pilots Ass'n*, 606 F.3d 1174, 1182 (9th Cir. 2010). The

8    statute of limitations begins to run when the challenged contract provisions are

9    adopted, i.e. when the CBA is executed. *Int'l Ass'n of Machinists v. NLRB*, 362 U.S.

10   411, 423 (1960); *Allen v. UFCW*, 43 F.3d 424, 428 (9th Cir. 1994) (holding injury

11   related to negotiated CBA became fixed at the time the union agreed to cutting

12   benefits even if the full extent of damage was uncertain); *Muldoon v. Teamsters*

13   *Local 572*, No. CV 22-0161 DSF, 2023 U.S. Dist. LEXIS 67193, at *7 (C.D. Cal.

14   Apr. 17, 2023); *Flathau v. Int'l Ass'n of Machinists, Dist. 141*, No. C03-0278L,

15   2003 U.S. Dist. LEXIS 8827 (W.D. Wash. May 14, 2003).[2]

16        Here, the limitation period began to run *at the latest* on July 19, 2021, when

17   the 2021 RTWA was executed with the COVID-19 vaccination terms. At this time,

18   their injuries became fixed and reasonably certain.[3] Plaintiff did not file their claims

19   within six months of July 19, 2021, and instead waited until December 2023. Their

20   claims are thus time-barred.

21        Plaintiff avoids pleading when they became aware of the vaccination policy,

22   but they do not plead that they only became aware of it within six months of the

23   _____

24   [2] The statute of limitations arguably began to run earlier. In *Addington*, the Court
     explained the DFR claim may accrue before negotiations are complete, at the time
25   "when the union actually advocated [a] position to the employer during
26   negotiations." 606 F.3d at 1182-83.

27   [3] *Allen*, 43 F.3d at 427-28 (distinguishing uncertain damage and uncertain *extent* of
28   damage), citing *Acri*, 781 F.2d at 1396-97 n.1.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   court filing. Instead, Plaintiff remains vague and alleges they have been injured

2   since vaccination requirements were put in place, presumably 2021. Complaint ¶¶

3   38-41. Even if Plaintiff had pleaded that they were not immediately aware of the

4   2021 RTWA's execution in July 2021, the limitations period still would begin to run

5   "when the employee discovers, or in the exercise of reasonable diligence should

6   have discovered, the acts constituting the alleged violation." *Galindo*, 793 F.2d at

7   1509 (cleaned up). Plaintiff knew of the RTWA COVID-19 provisions and the

8   Union's alleged breach nearly two-and-a-half years prior to filing when they allege

9   their injuries began because such injuries provided actual notice. Despite this,

10   Plaintiff filed their claims in late 2023, well after the time to file had passed.

11       Because more than six months had passed since July 19, 2021, when the

12   challenged provision was included in the RTWA, and more than six months had

13   passed since 2021 when Plaintiff's alleged injuries provided notice, their claims

14   were time-barred when the Complaint was filed.[4]

15               **2.**    **DFR Claim Over RTWAs' Implementation Is Time-Barred**

16       To the extent Plaintiff's claim concerns the Union's *implementation* of the

17   RTWA, it must fail because the last RTWA expired on May 13, 2023, and the

18   earliest filed case in these related actions was not filed until December 8, 2023,

19   more than six months later. Any implementation of the RTWAs or enforcement of

20   their provisions must have ended when the agreement expired. Therefore, casting

21   the DFR claim in terms of implementation as opposed to negotiation and execution

22   does not save Plaintiff's claim from the time bar.

23

24    [4] Plaintiff alleges "SAG-AFTRA deprived Plaintiff from the benefits and rights of a

25   fully informed Union as it pertained to application of the Members' Constitution."
       Complaint ¶ 49. If based on conduct separate from the RTWAs, Plaintiff still does

26   not allege any act or omission within the six-month statute of limitations; Plaintiff

27   does not allege those documents or the CBA were amended within six months of the

28   filing.

Plaintiff cannot successfully argue the statute of limitations is tolled due to obligations to exhaust internal processes or administrative procedures. DFR claims relating to CBA negotiations are not subject to the exhaustion requirement applicable in individual employment grievance cases (e.g. whether union properly decided to file a grievance over a member's employment termination). *Williams v. Pac. Mar. Ass'n.*, 617 F.2d 1321, 1328 (9th Cir. 1980); *Acri v. Int'l Ass'n of Machinists*, 781 F.2d 1393, 1396 n.1 (9th Cir. 1986). Where, as here, the pursuit of intraunion or administrative remedies is not a prerequisite for filing a DFR claim, tolling is not appropriate. *Conley v. IBEW Local 639*, 810 F.2d 913, 915 (9th Cir. 1987). Recently, rejecting a tolling argument, this Court construed the limitations period to begin at contract ratification. *Fisher v. Screen Actors Guild*, No. 2:21-cv-05215-CAS-JEMx, 2022 U.S. Dist. LEXIS 134693, at *28 (C.D. Cal. July 27, 2022). Accordingly, Plaintiff's DFR claim is time-barred and must be dismissed.

### C.    Plaintiff Has Failed to State a DFR Claim

Plaintiff's DFR claims independently fail because the Union's alleged conduct does not constitute a DFR breach as a matter of law and Plaintiff fails to allege any facts raising a reasonable inference of arbitrary, discriminatory, or bad faith conduct. *Vaca v. Sipes*, 386 U.S. 171, 190 (1967) ("A breach of the statutory [DFR] occurs only when a union's conduct toward a member . . . is arbitrary, discriminatory, or in bad faith."); *Marquez v. Screen Actors Guild*, 525 U.S. 33, 44 (1988) (holding where plaintiff does not allege discrimination conduct by defendant union, the only inquiry is whether union's conduct was arbitrary or in bad faith). To the extent the Complaint alleges that the Union acted negligently in its negotiations, such allegations do not give rise to a DFR violation, and therefore, any claims rooted in alleged negligent conduct by the Union must also fail.

### 1.    Courts Have Fashioned a High Standard for DFR Plaintiff

Plaintiff assumes that Defendant had a duty to ensure all agreements entered into with employers would positively affect their individual careers and/or ensure

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

they were offered roles by producer-employers. A union's sole obligation under its DFR, however, is to refrain from conduct that rises to the level of being arbitrary, discriminatory, or in bad faith. "Any substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *ALPA v. O'Neill*, 499 U.S. 65, 78 (1991). Courts "engage[] in a two-step analysis to determine whether a union has breached the [DFR]." *Burkevich v. ALPA*, 894 F.2d 346, 349 (9th Cir. 1990). The first question is whether the alleged union misconduct "involved the union's judgment, or whether it was procedural or ministerial." *Id.*; *see also Demetris v. Transp. Workers*, 862 F.3d 799, 805 (9th Cir. 2017). If the conduct was "procedural or ministerial, then the plaintiff may prevail if the union's conduct was arbitrary, discriminatory, or in bad faith." *Burkevich*, 894 F.2d at 349. But if the conduct involved the union's judgment, then the plaintiff may prevail "only if the union's conduct was discriminatory or in bad faith." *Id.*

The Supreme Court has emphasized unions are to be given wide latitude in negotiations, and courts are not to second-guess the product of collective bargaining simply because a particular group of employees is dissatisfied with the result. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338 (1953) ("Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees . . . .  The complete satisfaction of all who are represented is hardly to be expected."); *see also Humphrey v. Moore*, 375 U.S. 335, 358 (1964); *Bishop v. ALPA*, 5 F.4th 684, 694 (7th Cir. 2021) ("Concessions and compromises are inevitable by-products of the bargaining process and any single bargaining decision may inure to the benefit of some members while potentially injuring others."). The vaccination policy's inclusion is not tantamount to a DFR violation.

### 2. SAG-AFTRA Exercised Discretion When Negotiating the COVID Provision So Arbitrariness Is Insufficient

Plaintiff's DFR claim is based on the Union's negotiation, adoption, and

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

implementation of RTWAs, and in particular the vaccination policy. Complaint ¶¶ 27, 31, 45, 47. Because deciding what to negotiate involves exercising judgment, arbitrary conduct cannot constitute a DFR breach. The DFR standard acknowledges that unions have substantial discretion in the performance of their duties, and are exercising judgment when negotiating, adopting, and enforcing contracts. *Huffman*, 345 U.S. at 338; *Demetris*, 862 F.3d at 805. Plaintiff's allegations assert the Union made a choice—to consent to employers having the option to require vaccination— with which they did not agree. That choice is clearly within the discretion and judgment of the Union. Entering into the RTWAs constituted a deliberative decision-making process "taking into consideration any conditions and/or new information regarding the pandemic at that time." Complaint ¶¶ 18-20, 22.

Even if arbitrary conduct were legally sufficient, Plaintiff has not pleaded facts sufficient to show arbitrary conduct. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *O'Neill,* 499 U.S. at 67. "This deferential standard for arbitrary conduct 'gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong.'" *Beck v. UFCW*, 506 F.3d 874, 879 (9th Cir. 2007); *Peterson v. Kennedy*, 771 F.2d 1244, 1253-56 (9th Cir. 1995). Even if Plaintiff believes the vaccination provision was a mistake, nothing in the Complaint raises that mistake to the level of wholly irrational action. *Johnson v. USPS*, 756 F.2d 1461, 1465 (9th Cir. 1985) ("To constitute arbitrary conduct, omissions must be egregious, unfair and unrelated to legitimate union interests.").

Because the Complaint cannot establish a violation of the DFR under the "arbitrary" prong, Plaintiff can only prevail if they adequately plead facts showing bad faith or discrimination by the Union. *Burkevich*, 894 F.2d at 349. As described below, they have not.

9

MOTION TO DISMISS

### 3. Plaintiff Has Not Alleged Discriminatory Conduct

To satisfy the discrimination standard, a plaintiff must allege facts giving rise to an inference of "discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Demetris*, 862 F.3d at 806. Disparate treatment alone is insufficient: "[T]here is certainly 'no requirement that unions treat their members identically as long as their actions are related to legitimate union objectives." *Id.* Unions "by necessity must differentiate among its members in a variety of contexts[, so] a showing that union action has disadvantaged a group of members, without more, does not establish a [DFR] breach[.]" *Carpenters v. Metal Trades Dep't*, 770 F.3d 846, 852-52 (9th Cir. 2014); *accord Dement v. Richmond F. & P.R. Co.*, 845 F.2d 451, 458 (4th Cir. 1988).

Here, Plaintiff's conclusory allegations fall short. They allege that the Union negotiated, adopted, and enforced contract terms which were averse to their interests as unvaccinated entertainment workers, and that the Union failed to prevent them from prejudicial treatment by studios and producers. Complaint ¶¶ 5, 26-27, 30, 32, 45, 54. But they have not alleged that the Union acted with a discriminatory purpose unrelated to legitimate objectives when negotiating the RTWAs.

Unfortunately for Plaintiff, a qualification standard for employment which is applied equally to all employees, such as a safety-related standard permitting COVID-19 vaccination mandates by employers, is not discriminatory in and of itself. Plaintiff does not point to any conduct by the Union which demonstrates discrimination against them because of their unvaccinated status. *Wickstrom v. ALPA*, No. 23 C 2631, 2023 U.S. Dist. LEXIS 155987, at *17 (N.D. Ill. Sep. 5, 2023) (dismissing DFR because "failing to grieve or challenge [a] vaccine mandate in the manner [the plaintiff] wishes do not suggest an improper motive"); *DiOrio v. NEA*, No. 23-246 WES, 2023 U.S. Dist. LEXIS 198656, at *17-22 (D.R.I. Nov. 6, 2023) (dismissing DFR alleging union refused to support them during their termination for refusing to take the COVID-19 vaccine because they did not provide

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

sufficient factual support that the union's conduct was discriminatory, arbitrary, or bad faith). Protecting members' lives is clearly a legitimate objective of a union. This rationale serves as an "obvious alternative explanation" that is more likely given the loss of life and threats to health and safety during the COVID-19 pandemic. *Iqbal*, 556 U.S. at 682; *Century Aluminum,* 729 F.3d at 1108.

### 4.    Plaintiff Has Not Stated a Claim Based on Bad Faith

To plausibly plead a DFR violation based upon bad faith, Plaintiff must allege "fraud, deceitful action or dishonest conduct." *St. Elec. Ry. v. Lockridge*, 403 U.S. 274, 299 (1971). Bad judgment is not enough to support an inference of bad faith. *Stevens v. Moore Bus. Forms*, 18 F.3d 1443, 1448 (9th Cir. 1994). In negotiations DFRs, courts have held that "intentionally misleading statements" designed to induce members to vote to ratify a controversial contract provision can constitute bad faith only if they are "of a nature to be reasonably relied on by the membership." *Bautista v. Pan Am. World Airlines*, 828 F.2d 546, 551 (9th Cir. 1987).

Here, Plaintiff alleges "SAG-AFTRA had a duty not to mislead Union Members or their representatives to induce acceptance of the RTW[A]." Complaint ¶ 46. But Plaintiff has not alleged facts establishing how the Union misled members regarding the RTWAs, if at all, nor that any speculative misleading was intentional. Fundamentally, there is no allegation that members were even given the chance to ratify the RTWAs. *Id*. Moreover, they do not allege any bad-faith reasons for the Union entering into the RTWAs, as opposed to any number of good-faith reasons (e.g. protect the health and safety of union members on set).

Further, Plaintiff's allegations regarding the Union's inadequate response to their difficulty of securing work and the RTWAs' negative effects on their livelihood do not amount to a cognizable legal theory under the bad faith standard. Plaintiff alleges the Union ignored its members' complaints regarding how vaccination requirements were impacting their ability to get work and failed to

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

investigate on Plaintiff's behalf. Complaint ¶¶ 47. These bare accusations, however, do not give rise to a reasonable inference of "fraud, deceitful action or dishonest conduct" as required for bad faith. *Lockridge*, 403 U.S. at 299.

### 5. A DFR Claim Over Insufficient Representation of Plaintiff's Individual Statutory Rights Is Not Cognizable

Enforcement of external exemption processes operated by employers or enforcement of federal statutory law are beyond the confines of the CBA, and thus, the Union owes no DFR in connection with such claims, which Plaintiff is free to pursue without union assistance or participation. *United Steelworkers v. Rawson*, 495 U.S. 362, 374-75 (1990) (affirming summary judgment in favor of union where plaintiff argued union violated the DFR because union had the right to inspect a mine under state law, but the CBA did not impose such a duty); *Demetris*, 862 F.3d at 804 (holding union's DFR stems from "its statutory right to exclusive representation"); *Jeffrey v. Hegarty*, No. 5:15-cv-04506-HRL, 2017 U.S. Dist. LEXIS 47006, at *22 (N.D. Cal. Mar. 29, 2017) (finding no DFR on EEOC charges because union was not the exclusive representative in this area); *Wickstrom*, 2023 U.S. Dist. LEXIS 155987, at *20 (holding union has no duty to assist members in seeking religious accommodations for an employer COVID-19 vaccination requirement). Thus, insofar as Plaintiff argues their DFR claim is based on the Union's insufficient representation of their individual statutory rights, any such claim must be dismissed because the DFR does not apply in that context.[5]

---

[5] The DFR claim partly rests on alleged deprivation of the benefits and rights granted in the Union Constitution. Complaint ¶ 49. The DFR "does not apply where the union is not representing the workers[.]" *Simo v. Union of Needletrades*, 322 F.3d 602, 612-14 (9th Cir. 2003). It "extends only to matters involving an employee's dealings with his employer and ordinarily does not affect an employee's relationship with the union structure." *Kolinske v. Lubbers*, 712 F.2d 471, 481-82 (D.C. Cir. 1983). The DFR is thus restricted to causes of action rooted in the union's exclusive bargaining authority in representation of employees' interests, such as CBA negotiation and administration. *Marquez*, 124 F.3d at 1037; *Acri*, 781 F.2d at

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

To the extent the Complaint vaguely alleges the Union did not respond to their reasonable accommodation communications, Plaintiff must plead that they suffered "severe prejudice" due to the failure to communicate, such that the union acted with "reckless disregard" of the employee's rights. *Robesky v. Qantas Empire Airway*, 573 F.2d 1082, 1086-88, 1091 (9th Cir. 1978) (failing to communicate resulted in grievant rejecting settlement, and thus losing her job, which she "otherwise [would] have accepted"). Here, there is no evidence that the Union's failure to more quickly or regularly communicate with Plaintiff about their individual statutory rights resulted in severe prejudice, or that they would have otherwise been accommodated had the Union communicated better.

### D.  Plaintiff Lacks Standing As They Fail to Allege Causation, and This Failure Also Shows They Have Failed to State a DFR Claim

#### 1.  Legal Standard Under Rule 12(b)(1)

Article III of the United States Constitution limits the federal court's subject matter jurisdiction to cases or controversies. *Id*. § 2; *Allen v. Wright*, 468 U.S. 737, 750 (1984). FRCP Rule 12(b)(1) allows a defendant to move to dismiss a complaint for lack of subject matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *Maya v. Centex Corp.,* 658 F.3d 1060, 1067 (9th Cir. 2011). For the purposes of a Rule 12(b)(1) motion, the Court "need not presume the truthfulness of the plaintiff's allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

#### 2.  Plaintiff's Claims Are Non-Justiciable and Must be Dismissed Under Rule 12(b)(1)

To establish federal court subject matter jurisdiction, a plaintiff must allege facts sufficient to show that the standing requirements of Article III are satisfied: (1) they suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

---

1397. Any claims about the Union Constitution or Membership Agreement are internal matters that have no impact on their employment relationships.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Because Plaintiff did not plead their injuries are *fairly* traceable to the Union's conduct, their claim must be dismissed under Rule 12(b)(1).

The causation requirement for standing ensures that the defendant being charged with responsibility for the harm alleged is the one who actually caused that harm. *Duke Power Co. v. Carolina Envtl. Study Grp.*, 438 U.S. 59 (1978); *Warth v. Seldin*, 422 U.S. 490 (1975). Where the causal chain between defendant's allegedly unlawful conduct and plaintiff's injury is too attenuated or is interrupted by independent third-party decisions, this prong of the standing test has not been met. *Wright*, 468 U.S. at 758.

Causation has not been met here because the link between the Union's representational conduct—entering into the RTWAs—and the alleged injury—Plaintiff not being offered roles by third-party employers because of their vaccination status—is too attenuated. The third-party employers' decisions not to hire Plaintiff are not before the court, but they break any causal chain between the Union's conduct in entering into the RTWAs and Plaintiff's alleged injury. This is a separate basis for this Court to dismiss the Complaint.

### 3.    Failure to Plead Causation is An Independent Ground to Dismiss Plaintiff's Claims under Rule 12(b)(6)

Independently but relatedly, failure to plead facts that Plaintiff's harm was caused by the Union's challenged conduct requires dismissal under FRCP Rule 12(b)(6). To state a DFR claim, "plaintiff must establish a causal relationship between the alleged [conduct] and their injury." *Acri*, 781 F.2d at 1397. The DFR claims lack any nexus with the Union's actions given their injuries were caused by producers' policies, not the Union's conduct.

To the extent Plaintiff's claim is that the Union breached its DFR in the context of contract negotiations, such a claim is highly disfavored, in part because it is often impossible for a court to evaluate whether a union could have possibly

Busй Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   achieved different or better results in the negotiations; thus, courts leave issues of

2   accountability for bargaining-related conduct to be resolved through the union's

3   democratic processes. *Ackley v. W. Conference of Teamsters*, 958 F.2d 1463, 1472

4   (9th Cir. 1992). Plaintiff does not and cannot allege that the outcome—them not

5   getting acting jobs due to their vaccination status—would have been different had

6   the Union never entered into the RTWAs, and they acknowledged producer-

7   employers could utilize COVID-19 vaccination requirements. Plaintiff also does not

8   plead that production companies would have agreed to an alternative proposal, or

9   such an alternative would not have required substantial concessions of other

10  benefits. Without more, Plaintiff's factual support for causation is insufficient to

11  articulate a plausible DFR claim based on the Union's RTWA negotiations.

12          The entertainment industry is a competitive arena to secure employment. The

13  more plausible inference for Plaintiff's bare assertions of careers "going strong"

14  until they were cut short after the July 2021 RTWA is that Plaintiff had fewer

15  employment opportunities because of the competition in their field, especially when

16  filming was reduced due to the pandemic. Plaintiff has not pleaded they would have

17  received more roles but for the Union's actions or that a majority of producers even

18  instituted mandatory vaccination policies; instead their injuries were caused by the

19  independent actions of producer-employers. Absent alleged facts directly linking

20  their employment issues to the RTWAs' adoption, there is no injury traceable to any

21  Union act or omission, and Plaintiff has not plausibly pleaded a DFR claim. *DiOrio*,

22  2023 U.S. Dist. LEXIS 198656, at *26 (holding plaintiff failed to state a claim for

23  religious discrimination based on COVID-19 vaccination requirements in part

24  because defendant-unions were "not the decisionmakers who could have offered

25  Plaintiff an accommodation to the vaccination policy").

26          Plaintiff's failure to plead causation requires dismissal for both lack of

27  jurisdiction and of a plausible substantive basis on which to proceed.

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

### E.    Plaintiff's State-Law Claims Are Preempted

Plaintiff's remaining state-law claims are preempted by the DFR under the NLRA and/or LMRA Section 301, and thus must also be dismissed. The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land," U.S. Const. art VI, cl. 2, meaning federal law supersedes state law in areas where federal and state interests clash or overlap, or where, as here, Congress sought to occupy the field to the exclusion of the states. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 208-09 (1985). Preemption is "the practical manifestation of the Supremacy Clause." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1399 n.6 (9th Cir. 1988). When state law claims are preempted under federal labor law, state law is displaced, and the claims must either be treated as federal claims or dismissed as preempted. *Lueck*, 471 U.S. at 220-21; *Vaca*, 386 U.S. at 171; *Adkins v. Mireles*, 526 F.3d 531, 539 (9th Cir. 2008).[6]

### 1.    Federal Labor Law Preemption of State Law Claims
#### (a)    DFR Preemption of State-Law Claims

The duties, if any, owed by the Union to the employees it represents for contract administration, collective bargaining, and other representational purposes is governed by the NLRA, and the CBA for which the union is the exclusive bargaining representative. A state-law cause of action that takes issue with a union's performance of its role as collective bargaining representative, which is simply given a different label, should be treated by the court as a DFR claim. *Adkins*, 526 F.3d at 541 (holding where "conduct [underlying a state-law claim] was inseparable from [union-defendants'] performance of their role as collective bargaining representatives," the claim was DFR preempted); *Perugini v. Safeway Stores*, 935

---

[6] Plaintiff's preempted state-law claims against the Union must be dismissed for failing to meet the statute of limitations, which under both the NLRA and the LMRA is six months.  *DelCostello*, 462 U.S. at 169-72.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

F.2d 1083, 1088-89 (9th Cir. 1991) (holding that where a plaintiff challenges a union's conduct as their representative under state law, only a DFR action may be pursued); *Madison v. Motion Picture Set Painters*, 132 F. Supp. 2d 1244, 1256-58 (C.D. Cal. 2000) ("The [DFR] completely preempts state law, and thus state law claims challenging a union's representational activities must be recharacterized under the artful pleading doctrine as arising under federal law.").

### (b)    LMRA Preemption of State-Law Claims

LMRA Section 301 governs claims founded directly on rights created by CBAs, and those "substantially dependent on analysis of a [CBA]." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 395 (1987). Complete preemption applies to state-law claims brought within the scope of Section 301. *Id.* at 393-94. "State law claims that fall within the area of Section 301 are considered federal law claims and are preempted and removable." *Garcia v. SEIU*, 993 F.3d 757, 762 (9th Cir. 2021); *see also Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983).

### 2.    Breach of Contract

Plaintiff's second cause of action for breach of contract is preempted because they allege the contracts in question—the CBA, the membership agreement, the SAG-AFTRA Constitution, and the RTWAs—were violated by the Union's failure to adequately represent union members and protect them from discrimination. Complaint ¶¶ 1, 52-54. The promises allegedly breached therein concern the Union's duty to represent them as the exclusive bargaining representative. The federal statutory DFR displaces state law that would otherwise impose duties upon private sector unions by virtue of their status as the workers' exclusive collective bargaining representative. *Adkins*, 526 F.3d at 540 (dismissing a state-law breach of contract claim because it "implicated the statutory [DFR]"); *Erkins v. United Steelworkers*, 723 F.2d 837, 840 (11th Cir. 1984). To determine whether the state-law claims assert rights secured by the DFR, "the court must look to the conduct at the heart of the controversy." *Madison*, 132 F. Supp. 2d at 1257. The underlying

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

conduct Plaintiff alleges breached the relevant contracts—negotiating, entering into, and implementing the RTWAs—is purely representational activity. *Id.* at 1256 ("The [DFR] applies to all representational activity in which the union engages, including the 'negotiation, administration, and enforcement of [CBAs].'") (quoting *IBEW v. Foust*, 442 U.S. 42, 47 (1979)).

LMRA Section 301 expressly covers suits for violations of contracts between employers and a labor organization. 29 U.S.C. § 185(a); *Wooddell v. IBEW*, 502 U.S. 93, 102-03 (1991); *Lueck*, 471 U.S. at 211. State-law claims that require CBA interpretation are subject to Section 301 preemption. *Lueck*, 471 U.S. at 211; *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 25-28 (1962); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (holding that a state law claim is preempted if it either involves a right conferred upon an employee by virtue of a CBA, or is substantially dependent on analysis of a CBA). The CBA and RTWAs are thus "labor contracts" within the meaning of Section 301 and as such any allegation they were breached is preempted. Further, any breach of contract claim herein requires interpretation of the collectively-bargained RTWAs to determine just how the Union's conduct constituted a breach.[7] Accordingly, the breach of contract claim is preempted under federal labor law via both the DFR and LMRA Section 301 and must be dismissed with prejudice.

### 3.    Breach of Fiduciary Duty

Plaintiff's third cause of action, for breach of California common law fiduciary duties, is preempted because Plaintiff alleges Defendant's failure to represent members fairly and equally violated common law fiduciary duties. Complaint ¶ 57. Such a claim is reliant on duties derived from the union's status as its members' exclusive bargaining representative—acting in good faith and for the

---

[7] Regarding the Membership Agreement and the SAG-AFTRA Constitution, Plaintiff's attempt at enforcing these agreements within the Union do not amount to a DFR. *Office Emps.*, 351 NLRB 1417, 1425 (2000).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  benefit of members in its role as bargaining representative—and is rooted in the

2  same representational conduct—negotiating, adopting, and implementing the

3  RTWAs. It is thus DFR preempted. *Adkins*, 526 F.3d at 541 ("[T]he [DFR] occupies

4  the field of regulation of union-member relations when a union carries out its

5  representational functions[.]").

6          Determining whether any fiduciary duty flows to Plaintiff, and if so whether a

7  breach of that duty occurred, requires an analysis of the collectively-bargained

8  RTWAs. Therefore, the claim is preempted under Section 301 as well. *Garcia*, 993

9  F.3d at 766 (holding breach of fiduciary duty claim was preempted because it

10  required interpretation of a Section 301 labor contract); *Audette v. ILWU*, 195 F.3d

11  1107, 1113 (9th Cir. 1999). The breach of fiduciary duties claim is therefore DFR

12  and 301 preempted and must be dismissed with prejudice.

13              **4.      Breach of Covenant of Good Faith and Fair Dealing**

14          Plaintiff's fourth cause of action for breach of the covenant of good faith and

15  fair dealing is preempted because Plaintiff merely attempts to enforce duties that

16  Defendant owes in its capacity as bargaining representative—to fairly represent its

17  members by exercising its discretion with good faith and honesty. The covenant

18  claim is effectively a DFR claim. *Adkins*, 526 F.3d at 540 (dismissing breach of

19  covenant of good faith and fair dealing claim as subsumed by the DFR).

20          Additionally, to the extent this covenant is a guarantee derived from a union's

21  collectively-bargained contract, it is "preempted to the same extent the breach of

22  contract claim is." *Audette*, 195 F.3d at 1112. Plaintiff's good faith and fair dealing

23  claims rest on the same labor contracts discussed above, Complaint ¶ 64, and is also

24  301 preempted. This Covenant claim is thus preempted and must also be dismissed

25  with prejudice.

26              **5.      Negligence**

27          Plaintiff's fifth cause of action for negligence is preempted because it again

28  arises from the Union's alleged failure to fairly and adequately represent Plaintiff's

1  interests. Complaint ¶¶ 67-68. Plaintiff challenges the Union's conduct as their

2  representative and as such, this is merely a DFR claim artfully pleaded as a state-law

3  claim. *Madison*, 132 F. Supp. 2d at 1250 ("Under the 'artful pleading' doctrine, a

4  plaintiff cannot defeat removal [and preemption] of a federal claim by disguising or

5  pleading it artfully as a state claim.").

6        In addition, such a claim requires analysis of the collectively-bargained

7  RTWA to determine the existence and scope of any duty allegedly breached by the

8  Union. *Ward v. Circus Casinos, Inc.*, 473 F.3d 994, 999 (9th Cir. 2007) ("State-law

9  negligence claims are preempted if the duty relied on is created by a [CBA] and

10  without existence independent of the agreement.") (cleaned up); *IBEW v. Hechler*,

11  481 U.S. 851 (1987) (holding common law negligence claim against union for

12  failing to provide a safe workplace was 301 preempted because ascertaining whether

13  the union had assumed the duty of care that it allegedly breached required CBA

14  interpretation). Thus, the negligence claim is DFR and 301 preempted, and must be

15  dismissed with prejudice.

16            **6.    Tortious Interference with Business**

17        Plaintiff's sixth cause of action for tortious interference with a business

18  advantage must be dismissed because such a claim is subsumed under the DFR. This

19  claim challenges the Union's conduct as the exclusive bargaining representative,

20  and thus is preempted by the DFR. *Adkins*, 526 F.3d at 540. Plaintiff alleges the

21  Union prevented them from receiving offers from studios, producers, or through

22  talent agencies. Complaint ¶ 73. To the extent this was due to the RTWAs and any

23  failure to adequately represent Plaintiff's interests in remaining unvaccinated and

24  still securing work, such conduct is "inseparable from" the Union's role as

25  collective bargaining representative. *Adkins*, 526 F.3d at 540.  Therefore, this state-

26  law claim is DFR preempted, and dismissal with prejudice is appropriate.

27            **7.    Intentional Infliction of Emotional Distress**

28        Plaintiff's seventh cause of action for intentional infliction of emotional

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

distress ("IIED") is preempted because this state-law tort claim is "inextricably linked" to the Union's performance of duties owed in their capacity as collective bargaining representative. *Id.* at 541-42. Plaintiff alleges emotional distress due to the Union's failure to adequately represent their interests in collective bargaining. Complaint ¶ 77. Because the IIED claim is based on the Union's alleged failure to represent them, it is DFR preempted. *Adkins*, 526 F.3d at 541-42 (holding IIED claim was preempted under the DFR); *Perugini*, 935 F.2d at 1089 (holding IIED claim was preempted because "the claim was based on the [u]nion's failure to represent [the plaintiff]"). Thus, the IIED claim is DFR preempted and must be dismissed with prejudice.

### 8.    Negligent Infliction of Emotional Distress

Plaintiff's eighth cause of action for negligent infliction of emotional distress ("NIED") is preempted because it is rooted in the Union's alleged failure to adequately represent their interests and requires analysis of the collectively-bargained RTWA to determine the existence and scope of the Union's alleged duty. Complaint ¶ 82; *Brown v. Alaska Airlines, Inc.*, 642 F. Supp. 3d 1259,1265 (W.D. Wash. 2022) (The DFR "will preempt any state-law claims . . . arising out of a union's performance of its role as collective bargaining representative."); *Perugini*, 935 F.2d at 1089 (holding NIED claim preempted where it required interpretation of the CBA); *Rawson*, 495 U.S. at 369 (holding preemption by federal law could not be avoided by characterizing the union's negligent performance on behalf of members pursuant to the terms of the CBA as a state-law tort). Thus, the NIED claim is DFR preempted and must also be dismissed with prejudice.

## IV.    <u>CONCLUSION</u>

SAG-AFTRA respectfully request dismissal of the Complaint with prejudice because amendment would be futile. *Chappel v. Lab. Corp.*, 232 F.3d 719, 725–26 (9th Cir. 2000). Plaintiff's DFR claim is time-barred. Therefore, any amendment would be futile. *Adkins*, 526 F.3d at 539-42 (affirming dismissal with prejudice of

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  DFR and LMRA preempted state-law claims); *Jay*, 203 F. Supp. 3d at 1043
2  (dismissing DFR claim and the LMRA and DFR preempted state-law claims with
3  prejudice because they were time-barred); *Batache v. Santi*, No. 2:18-cv-6907-
4  ODW, 2018 U.S. Dist. LEXIS 195304, at *5 (C.D. Cal. Nov. 15, 2018) ("Plaintiff's
5  claim is time barred; thus, no amendment could cure the deficiency and renders
6  leave to amend futile.").

7

8  DATED: March 20, 2024              JULIE GUTMAN DICKINSON
9                                     LISA C. DEMIDOVICH
                                      SOPHIE NEWMAN
10                                    BUSH GOTTLIEB, A Law Corporation

11

12

13                                    By:      s/ *Lisa C. Demidovich*
                                              LISA C. DEMIDOVICH
14                                    Attorneys for SAG-AFTRA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**Form CV-141. Certificate of Compliance**

**Case Number(s): 2:24-cv-02003-JLS-JC**

I am the attorney or self-represented party.

This brief contains 6,934 words, excluding the items exempted by Local Civil Rule 11-6.1.

I certify that this brief complies with the word limit of L.R. 11-6.1.

Signature  _s/ Lisa C. Demidovich_          Date _March 20, 2024_

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1032171v1  11840-33010

23

MOTION TO DISMISS

## PROOF OF SERVICE

### Case No.
### 2:24-cv-02003-JLS-JC

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Los Angeles, State of . My business address is 801 North Brand Boulevard, Suite 950, Glendale, CA 91203-1260.

On March 20, 2024, I served true copies of the following document(s) described as **DEFENDANT SAG-AFTRA'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested parties in this action as follows:

Gerard P. Fox                                        *Attorneys for Plaintiff*
Breyon J. Davis
Gerard Fox Law P.C.
1880 Century Park East, Suite 1410
Los Angeles, CA 90067

Email: gfox@gerardfoxlaw.com
       bdavis@gerardfoxlaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 20, 2024, at Glendale, California.

_____
Chelsea Mayo